Mr. Hart, would you begin your argument please? Thank you, Judge. May it please the Court. This case involves some very fundamental propositions, including that a plaintiff has an obligation to prove, not assume, the critical element of causation, and that expert testimony cannot be based on the unverified assumptions of a party. Yet, in this case, causation was assumed, and a jury awarded more than $6 million in lost profits based on the testimony of S & H's expert, Wayne Brown, who relied on that causation assumption without any attempt at verification. Now, S & H Farm Supply was one of Bad Boy's top dealers, then in 2016, contrary to its long-held philosophy of selling only one line of zero-turn lawn mowers in a market segment, S & H began selling Spartan mowers, which competed directly with Bad Boy. After that decision in 2016, S & H experienced a precipitous drop in its sales of Bad Boy mowers over the next three years, while realizing a large corresponding growth in Spartan sales, a fact that's illustrated on page 29 of our opening brief. Because of this dramatic decline in sales, Bad Boy terminated S & H as a dealer in September 2018, and S & H then filed this lawsuit, claiming that the decline in Bad Boy sales from 2016 to 2018 was actually the Now, as we discussed in the briefs, the evidence at trial did not establish a meeting of the minds between Bad Boy and S & H on the scope of the protected territory, and therefore we submit there was no evidence that the location of any Bad Boy dealers somehow breached the dealership agreement. Nor was there any competent evidence that the... Counsel, what you're describing are things that all went to the jury to conclude or make factual conclusions about as to whether there was protected territory and the extent of that territory. It seems the parties did reach some kind of an agreement about the existence of protected territory, but perhaps there was dispute about the precise contours of it and the measure. But much of what you're describing are matters that were matters of best legal argument to us for overturning a jury verdict and concluding that the district court should never have permitted it to get that far. Judge, because there was no competent evidence that these dealers caused the drop in S & H's Bad Boy sales from 2016 to 2018. In fact, the evidence was Mr. Schnelli, S & H's owner, acknowledged at trial that there were many things that caused the decrease in Bad Boy sales during that period of 2016 to 2018, including the sale of Spartan mowers, as well as competition from other mower brands that dropped in farm income and poor mowing weather. Yet, their expert, Mr. Brown, was simply told by S & H for purposes of his lost profits analysis to assume that the entirety of S & H's decline in Bad Boy sales was due to the new dealers. I think I'd be wrong, or all of the above. If it was all of the above, right, so new dealers in the 35 mile area, bad weather, the sale of Spartan mowers, arguably the jury verdict could stand, right? I mean, they don't have to narrow it down to just one single cause, do they? Yes, they do, Judge. And because the requirement here with respect to lost profits is reasonable certainty. That's the standard. And this court has talked about it in a number of cases. And so there was no evidence as to the fact of damage as a result of the new dealers, let alone the amount. And then we had the second count where the termination, where Mr. Brown testified that S & H was entitled to more than $5 million of future lost profits from the date of termination to 2028. As for that calculation, it was based on the same false premise as the past lost profits calculation, because in projecting future lost profits from S & H's prior sales history, Mr. Brown, at the instruction of S & H, ignored the drop in bad boy sales from 2016 to 2018. And that's why the cause for those drop in sales was critical. Missouri law requires, and again, in this diversity case, Missouri law governs, requires the proof of lost profits to be exacting. And they must be proven with reasonable certainty. And Missouri courts have consistently held, and we cite the authorities to the court, recovery of lost profits is prohibited when there is uncertainty or speculation as to whether the claimed loss was the result of the wrong. And there was clearly uncertainty and speculation here. So your argument is really that the expert had to rule out all of these other causes, had to, in calculating everything, had to say, okay, this was the contribution of bad weather. This is the contribution of Spartan. And this is the contribution of bad boy putting dealers in your area. But that level of specificity was required. There has to be that evidence in the record, Judge. And that's the holdings, not only of the Missouri courts, but of this court in applying Missouri law, as well as other state laws that rely on the reasonable certainty standard. Because what we He merely took all of S&H's loss from the decline in bad boy sales for that period, and assumed, assumed that it was caused by the dealers that were new dealers authorized by bad boy, because that was the information given to him by S&H. Not only did that improperly assume causation, but it was counterfactual. Given the concession by Mr. Schnelli, S&H's owner, that there were many things that affected S&H's decrease in bad boy sales during that period. Spartan being one of them, and the others being, as he identified, competition from other manufacturers, reduced farm income, bad mowing weather. Yet, Mr. Brown, the expert, wasn't even provided that information, Judge. Did you want to- Mr. Honkwood? Mr. Honkwood? Go ahead, Chief. Again, I interrupted you. I was just going to ask, was there counter-expert testimony put forth by the defendant? Yes, there was counter-expert testimony, Judge. To add on to that, did you vigorously- all these things you're arguing, Josh, did you vigorously cross-examine S&H expert? Did you say, well, what provision did you make for bad weather? Did you take into account the sale of Spartan mowers? Did the jury get to hear all of that through cross-examination? There was cross-examination, Judge. But again, under the reasonable certainty standard, it's for the court. The evidence must be- the evidence of the fact and amount of damages must be proven to reasonable certainty. And that's a standard for the court that goes to the sufficiency of the evidence. And if, in fact, that standard is not met, it's not for the jury to ultimately determine whether or not the reasonable certainty standard was met. That's a standard imposed as law. Now, this court has consistently found this type of evidence insufficient to support an award of lost profits. We cite to the court the Hintz v. Neuroscience case. I believe Judge Gardner was on the panel, where this court found the calculation of lost profits based on a drop in revenue book was speculative because plaintiff could not show how much of the decline was due to the defendant's wrongful conduct as opposed to other possible causes. Also, the court in that case noted that the plaintiff, like here, made no attempt to identify customers that were lost due to the breach, not one. We also cite to the court USO v. Broken Hill, another opinion of this court, where the court rejected as unreliable expert testimony that was based without any independent verification on a party's unsupported assumptions, which is precisely what happened here. Here, the lack of reliability is even more pronounced because the expert not only relied on the unsupported assumption, but disregarded the actual facts identified by Mr. Schnelli that conflicted with that assumption in terms of the other things that contributed to the decline. In fairness to him, he wasn't told. In Concord Boat, another opinion of this court, where the court observed that an expert opinion cannot sustain a jury's verdict through an indisputable record evidence, such as we have here with Mr. Schnelli's testimony, contradicts or otherwise renders the opinion unreasonable. As for Mr. Brown's future lost profits calculation, normally when an expert makes a projection of future lost profits, it's based on the actual sales figure for the period right before the alleged wrong, which was here the termination. Which again, that period before the termination was one of declining bad boy sales by S&H. Yet S&H instructed Mr. Brown to assume those declining sales were due to new bad boy dealers and consequently to ignore those years in his calculation. He went back to 2015 and assumed bad boy sales would have grown at 10% per year from 2015 through 2028. But for bad boy's actions, when in fact, from 2016 to 2028, they declined by 20% a year. For, as Mr. Schnelli admitted, many reasons that had nothing to do with bad boy, including the sale of spark mugs. In that regard, we also cite to the court the Missouri case of GFG American Gas Detection, where the Missouri Court of Appeals reversed a judgment for future lost profits because it was based on projections that ignored the claimant's actual sales and revenue results. Mr. Schnelli also admitted at trial that after the termination, S&H was able to replace some sales of bad boy mowers with other brands, which may explain why S&H's revenue from its mower sales across brands was roughly the same both before and after the termination. Again, facts that were not considered by Mr. Brown. And since he didn't review the depositions in the case, he didn't know that S&H's store manager testified that before the termination, he had expected bad boy sales to be flat for the next several years. Mr. Brown admitted at trial that had he known of that, it could have reduced his future lost profits calculation to zero. We also cite to the court the Carlson Limousine case. Judge Smith was on the panel where the court held that an expert who assumed the lost sales growth was caused by the defendant's actions was not admissible and that the analysis failed to incorporate all aspects of the economic reality. Just a few months ago, Judge Correndo wrote an opinion where he wrote for the court that whether an expert opinion meets the requirements of Rule 702 and Daubert is whether the expert attempted to rule out other possibilities for the claim loss. Mr. Brown didn't make any attempt to rule out other reasons for the decline in bad boy sales, even the obvious ones identified by S&H's witnesses. Mr. Hart, you're within your rebuttal time. You can continue if you'd like or you can reserve. Judge, I will reserve the balance of my argument. Thank you, Mr. Hart. Mr. Whiston. Thank you, Your Honor. May it please the court. In reading the briefs file by bad boy in this case and hearing the argument that we just heard, it's abundantly clear what this appeal is really about. This appeal is about bad boy trying to re-argue the facts of this case. Facts that were heard by a jury and decided so decisively against bad boy that after five days of evidence, testimony from 17 witnesses, including two competing damages experts, it took the jury less than two hours to return a verdict for S&H on both of its claims and award S&H every single penny of damages it sought. The district court's rulings below must be affirmed and the jury's unanimous verdict must be affirmed. I want to start by talking about something that was left out in the entirety of Mr. Hart's argument and not talked about by bad boy much in its brief. And that is the standard of review in reviewing the court's ruling on the motion for a judgment as a matter of law. Now this court on multiple occasions has expressed great hesitancy in interfering with a jury's verdict when considering a motion for judgment as a matter of law. This court has said the law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused. In considering a motion for a judgment as a matter of law, in this case, S&H is entitled to the benefit of all disputed facts and the benefit of all reasonable inferences and conclusions that can be drawn from the evidence that was presented at trial. Throughout the entirety of this appeal, in its briefs, in its argument, bad boy has done nothing more than the reverse of this standard. It has argued that facts which are disputed should somehow be conclusively established in their favor on this appeal, which is not the case. For example, Mr. Hart argued in his argument, as they do in their appeal, that there was no evidence of a meeting of the minds on the breach of contract claim or a meeting of the minds that there was a protected territory of 30 to 35 miles. This ignores all of the evidence that supports that claim. Evidence from Mr. Schnelli, S&H's owner, that there ultimately was an agreement for a 30 to 35 mile protected territory measured as a radius. Testimony from Mr. Schnelli that up until 2016, bad boy would ask permission when it was wanting to appoint a dealer within 35 miles, and if he denied permission, the dealer would not be appointed. Maybe the main piece of evidence that bad boy ignored at trial and continues to ignore in this appeal is exhibit 65, which can be found in the addendum pages 1 through 3 of S&H's brief. Independent verification and evidence of bad boy's outward manifestations honoring this agreement. It was a letter from a dealer, an existing bad boy dealer, who sought to have a dealership appointed within 35 miles as the crow flies of an S&H store and was denied. In this letter... Mr. Whitson, I think you're in areas where we're not particularly troubled. Would you address the concern that seems of more consequence to me, and that's the evaluation of the damages calculation. What's the factual basis for the expert's testimony of the loss that was requested and apparently granted by the jury? Well, your honor, it's important to note that there were two distinct damages calculations performed in this case by Mr. Brown. The first related to S&H's breach of contract claim, which was for profits lost from 2016 through 2018 after the appointment of 10 new dealers. The basis of Mr. Brown's opinion was rooted in actual data and actual facts. Specifically, Mr. Brown reviewed an extensive sales history of S&H from 2011 to 2015, including parts, including service, including new inventory. He examined that data, he did industry research, and he made a calculation of what the projected profits would be from 2016 through 2018 but for interference by bad boy. Now, with regard to that claim, it's important here to note that Mr. Brown was not a causation expert. Mr. Brown was an expert to calculate damages should the jury find that the losses from 2016 to 2018 were caused by the competing dealers. In that regard, Mr. Brown's opinion is based on sufficient data and was helpful to the jury. And in that regard, it's important to note the standard. When you're talking about review of the admissibility of expert testimony, it is admissible and only excluded if the facts are so unsupported that it can offer no assistance to the jury. With regard to the past loss profits claim, should the jury find that those losses, even though there was disputed evidence, which there was, but that's for the jury to resolve, should the jury resolve that those losses were caused by the competing dealers, which it did, Mr. Brown's opinion was helpful to the jury, properly admitted, and it was based on actual data of S&H's sales and growth for a five-year period. Was there other evidence that established causation? So the reason I ask is because, you know, he makes the point, well, but there are other things going on here that are clear, and, you know, Mr. Brown didn't consider all of that. And so, obviously, one way to deal with that is to present other evidence of causation. Was there such evidence, and what exactly was it? Yes, Your Honor, there was independent evidence of causation in this case. There was testimony from Mr. Schnelly, the owner of S&H, that, you know, after the appointment of these dealers, they were no longer seeing customers travel from areas and towns where these dealerships were appointed, which they had consistently seen for years when they were the only dealer in the area. There was testimony of salesmen receiving actual feedback of sales being made by these other dealers and not at S&H. There was testimony of Bad Boy mowers being brought to S&H that were not purchased from S&H, but one of the nearby dealers. So this evidence, in and of itself, is proof of causation, proof that, but for these dealers, there was no other Bad Boy dealer in the area, and S&H would have enjoyed these sales, and instead, sales were being lost to these dealers. And there's also a reasonable inference that can be drawn from the evidence, which is pointed out in our brief, which is there is a direct correlation in S&H's drop in sales from 2016 to 2018, which gets greater as more dealers are being appointed. And a jury can infer from that evidence causation. This court has held, well, I'm sorry, the Missouri Court of Appeals have held, and these cases are cited in Bad Boy's brief, Sanders and the Searcy case, that causation does not have to be proven by direct facts. It can be proven by reasonable inferences based on the evidence. So there was ample evidence of causation in this case. And having established the fact of damages on the breach of contract claim with reasonable certainty, I should point out also that the standard under Missouri law is that the exact amount can be proven with less certainty. And Mr. Hart in his argument talked about exactitude of damages, but damages do not have to be proven as an exact science in Missouri. The fact of damages must be proven with reasonable certainty, but the courts have recognized that the lost profits are inherently a damage that defies specific proof. Now, I want to turn quickly to the future lost profits damage opinion by Mr. Brown in evidence, which is a separate and distinct opinion. And all the arguments regarding ruling out other causes of drop sales, they don't apply to this opinion. What Mr. Brown did is what is exactly provided for by Missouri law. Missouri cases have said that reasonable certainty can be proven by examining evidence of actual sales, revenue, and expenses from a period prior to the interruption of the defendant with a consequent establishment of net profits. That is precisely what Mr. Brown did. He reviewed sales data and expense data from 2011 to 2015 based on S&H's actual performance and actual sales of Bad Boy. He deducted expenses, he calculated net profits, and he projected those profits out 10 years. A reasonable time frame based on his review of the industry and his work in doing loss of line and dealer sales. Now, Mr. Haar and Bad Boy have consistently pointed to the fact or made statements that Brown was told to ignore the declining sales in 2016 and 2018. That's just not true, and that wasn't the testimony at trial. Mr. Brown does say that he didn't include 2016 and 2018, but he had a reason for doing it. And that reason was Bad Boy was breaching its contract at that point in time and actually causing those sales to go down. Setting that aside, Mr. Brown also offered a number of other reasons that he excluded 2016 and 2018 from his analysis. One of which was the fact that, for example, they talked about the growth rate and using 2015 was improper because there were actually losses in 2016 and 2018. Well, Mr. Brown explains that his selection of the growth rate of 10% was actually because it was a conservative number. S&H's sales had actually grown in many years at a number much higher, sometimes even as close to 40%, but he felt that wasn't sustainable. Counsel, did Mr. Brown's calculations take into account the presence of the Spartan competing line? Did he expressly take that into account in his future loss profits calculation? Well, in either of the calculations, in any of his calculations. He did not expressly take into account anything with regard to Spartan in his calculations. But what he did do was examine the history, chose the most conservative growth rate that there was, and he explained that he could have actually utilized a 25% growth rate but chose 10% because it was more conservative and more in line with industry data. I would also point out, Your Honor, to your question, while it didn't take into account Spartan specifically, S&H always sold three to four other lines of mowers and was always able to grow its bad boy sales even though it was selling mowers, which did overlap. There was testimony that even other than Spartan, there were mowers that overlapped with S&H and they nevertheless consistently grew at a rate much higher than 10% utilized by Mr. Brown. While he didn't specifically say, I'm looking at Spartan and what their impact is, his numbers did take into account that this is a competitive store that always sells competing mowers against one another and even doing so had always been able to have a very high number of bad boy sales and grow that brand. In short, Your Honors, Mr. Brown's testimony meets the standards established by Missouri law for the admissibility and for a proof of lost profits, and there was proof of causation. I explained the proof of causation relating to the breach of contract claim with regard to the termination claim. There was absolutely proof of causation because S&H lost its best-selling mower brand as a result of the termination. To say that they didn't lose a single dollar or a single penny or didn't suffer a single penny of damage after losing Bad Boy when they had achieved $1.9 million in revenue up to September of 2008, not even a full year, the year they were terminated, is just flagged by the evidence. They would have sold more Bad Boys and the jury could decide that from the evidence. Mr. Whiston, I have a question on a different issue. On the jury instruction question about whether the jury should have been instructed about the extent of the protected territory, I found it kind of peculiar that the district court said there's no dispute regarding whether defendant was granted a protected territory and then goes on to say there was no dispute regarding the size of the protected territory that the plaintiff alleged it had been granted. Well, of course there's no dispute about what the plaintiff alleged. Was there a dispute about the extent of the territory, a fact dispute? And if so, why shouldn't that have been part of the jury instructions? Your Honor, there was a dispute about the scope of the protected territory and the dispute was this. S&H claimed that it was 30 to 35 mile radius. Bad Boy claimed that they granted a protected territory, but they could modify it whenever they wanted and it wasn't defined in miles. So I question whether that's even really agreeing that there was a protected territory or not, when in practice they could really do whatever they want. Setting that aside, the reason that the instruction was proper and the reason this case is readily distinguishable from the Meridian case, which Bad Boy relies on, is this. The court in Meridian, that case involved a situation where there was a dispute about whether or not an agreement was exclusive and they failed to posit that specific question to the jury. The concern that the court had in Meridian was the fact that as the jury instruction was presented to the jury as written, the jury could find liability without finding that there was exclusivity or an exclusive agreement. The same is not true here. In deciding a breach or deciding a liability, the jury necessarily had to find that the protected territory was 30 to 35 miles. Otherwise, if it was as Bad Boy posited and not measured in miles or could be subject to change whenever it wanted, there could be no breach. Bad Boy could do what they want. So this wasn't a situation like in Meridian where there could be liability without answering the question. The jury necessarily had to decide this question in the instruction. So the instruction was proper. And even if it wasn't proper, there can be absolutely no demonstration here that there was any prejudice for that specific fact being that the jury necessarily had to decide the question. With that, Your Honor, it looks like I'm short on time. We respectfully ask that this court affirm the trial court's rulings below and affirm the jury's unanimous verdict in this case. Thank you. Thank you, Mr. Whiston. Mr. Haar, your rebuttal. You're muted, Mr. Haar. You're muted. We can't hear you. You're muted. Okay. Am I okay now, Judge? Yes. Okay. In page 46 of the addendum, you'll see the testimony from Mr. Brown regarding future profits. He said, I stopped at 2015 and used the 10% because of the assumption that I was provided that there was, after that period, influence in what the company did with the Bad Boy product between 2016 and 2018 and that those wouldn't necessarily be the ones to use in this calculation based on all of that information. It seems that they've taken Mr. Brown off the table as proof of causation, and so I do think I would commend to the court the evidence that they otherwise cite to meet this standard of reasonable certainty. They are Mr. Schnelli's conclusory statement at trial that the appointment of the new Bad Boy dealers was the number one reason for S&H declining Bad Boy sales from 2016 to 2018. Now, Mr. Schnelli cited no evidence to back that up, and it begs the question, if it's number one, what's two, three, and four? What role did they play as far as the drop in profits from 2016 to 2018? Again, none of their witnesses identified a single customer who purchased a Bad Boy mower from a allegedly competing new dealer who would have otherwise purchased the mower from S&H. And again, in their brief, they don't even acknowledge Schnelli's testimony about all of the other reasons. They also cite Schnelli had vague statements at trial about unidentified customers no longer traveling to S&H from areas where new dealers were appointed. What his testimony reads, he made conclusory assertions that S&H automatically lost sales because of all of these other dealers, and these dealers were naturally going to pick up a lot of those sales. The other things that he cites, unspecified feedback from unidentified S&H salesmen about sales allegedly lost to unidentified new dealers, and unsupported claims by a store manager about customers allegedly seeking service for mowers not purchased at S&H, he doesn't even opine where they got them. Again, the standard here, Judge, is reasonable certainty. And there is no way, under this Court's cases, under Missouri cases, whether you're looking at this evidence or the testimony of Mr. Brown, that that standard is met. And for that reason, the judgment as a matter of law should be granted to Bad Boy. There was a failure of proof as to the fact and amount of damages, and this case should be remanded so that judgment can be entered. Thank you. Thank you, Mr. Haar. Thank you also, Mr. Whiston. The Court appreciates both counsel's presence before the Court this morning and the argument that you've provided us, and we will take the case under advisement and continue to review the written materials. Thank you.